IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL and PATRICIA RAGO | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Civil Action No. 08-1423 |
| v. | ) | |
| | ) | |
| CITY OF PITTSBURGH, | ) | |
| MARGARET LANIER, TREASURER | ) | |
| FOR THE CITY OF PITTSBURGH | ) | |
| IN HER OFFICIAL CAPACITY, | ) | |
| MARGARET LANIER, INDIVIDUALLY, | ) | |
| And RICHARD FEES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Michael and Patricia Rago ("plaintiffs" or "Ragos") initiated this action under 42 U.S.C. § 1983 ("§ 1983") against defendants City of Pittsburgh ("City"), Margaret Lanier, Treasurer for the City in her official and individual capacities ("Lanier") and Richard Fees ("Fees") (Fees together with the City and Lanier, collectively "defendants").

Plaintiffs assert that defendants' failure to provide proper notice of a treasurer's sale pursuant to the Second Class City Treasurer's Sale and Collection Act, 53 PA. CONS. STAT. §§ 27101, *et seq.* (the "Second Class City TSCA") violated their due process rights under the Fourteenth Amendment to the United States Constitution. The parties filed cross-motions for summary judgment.

Plaintiffs filed a partial motion for summary judgment seeking to have the court determine as a matter of law that defendants are liable (Docket No. 30), and defendants filed a motion for summary judgment (Docket No. 34) seeking judgment in their favor with respect to all claims against them. After considering the parties' pleadings, the court will grant defendants'

motion for summary judgment and deny plaintiffs' partial motion for summary judgment because a reasonable jury could not render a verdict in favor of plaintiffs on their claim under § 1983 for a violation of due process.

## *Factual Background*[1]

### A.      Introductory facts

Plaintiffs reside at 3501 Heron Cove Court, Bonita Springs, FL 35434 ("Heron Cove"), which is their only residence.  (Plaintiffs' Combined Concise Statement of Material Facts ("C.S.") (Docket No. 44) ¶ 1.)  For over forty years, until August 17, 2006, the Ragos were the record owners of rental property located at 41-43 Craighead Street, Pittsburgh, PA 15211 (the "Property").  (C.S. ¶ 2.)

The City is a Pennsylvania city of the second class located in Allegheny County, Pennsylvania (the "County").  (C.S. ¶ 3.)  Defendant's Treasury Department is a branch of the City's municipal government and the head of the department, the treasurer, is responsible for collecting the City's property taxes and conducting sales of properties for which taxes are delinquent.  (C.S. ¶ 4; Pls.' App. (Docket No. 33), Ex. 3 ("Lanier Dep. Docket No. 33") at 4-5.) Lanier is the treasurer for the City. (C.S. ¶ 5; Lanier Dep. Docket No. 33 at 4-5.)  Fees was the City's treasurer during the events associated with the complaint. (C.S. ¶ 6; Am. Compl. (Docket No. 33) ¶ 5.)

### B.      Tax bills and notice of address to the City

---

[1] The court will grant summary judgment in favor of defendants, and in doing so views all disputed facts in a light most favorable to plaintiffs and draws all reasonable inferences against defendants.  El v. Southeastern Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007) ("In considering the evidence, the court should draw all reasonable inferences against the moving party.").

The Property is located within the City and is subject to payment of City and school district taxes. (C.S. ¶ 7.) The Ragos designated James Krupa ("Krupa") to pay taxes on the Property pursuant to a commercial installment land contract ("land contract"). (C.S. ¶ 10; Defs.' App. in Supp. of Mot. (Docket No. 38), Ex. B ("Pls.' Dep. Docket No. 38") at 13-14, 23.) On July 19, 2004, the tax billing mailing address was changed by Mary McCord of the Allegheny County Treasurer's Office from the Heron Cove address to James Krupa, 4708 Brownsville Road, Pittsburgh, PA 15236 ("Brownsville address"). (Defs.' App. in Supp. of Mot. (Docket No. 38), Ex. E ("Bradley Affidavit Docket No. 38) at 2.) Between 2005 and 2007, the County assessment record listed title to the Property in the names of Michael and Patricia Rago, and tax bills were mailed to Michael and Patricia Rago at the Brownsville address in accordance with the July 19, 2004 change. (Bradley Affidavit Docket No. 38 at 2.) Plaintiffs did not receive tax bills at Heron Cove from the City for the Property during 2006 and 2007, and those taxes became delinquent. (C.S. ¶ 10; Pls.' Dep. Docket No. 33 at 53.)

C.     **Treasurer's sale procedure**

The City's process of selecting properties for treasurer's sale and notice procedures is described in the Standard Treasurer's Sale Process Manual. (C.S. ¶ 13; Pls.' App. (Docket No. 33), Ex. 6 ("Treasurer's Sale Manual") (Docket No. 33).) Various customs and office procedures also provide contours for the process. (C.S. ¶ 13; Lanier Dep. Docket No. 33 at 12, 17.)

The City under the direction of its treasurer sends certified and regular mail notices of treasurer sales to interested parties as designated by the City Computer Information System ("CIS"). (C.S. ¶ 14; Treasurer's Sale Manual Docket No. 33; Lanier Dep. Docket No. 33 at 19-23.) Prior to sending notices, the treasurer is to check the data gathered by the CIS for errors and

corrections are made. (Treasurer's Sale Manual Docket No. 33 at 4.) An unwritten policy of the City is that the tax billing addresses for owners are obtained from the tax billing file of the County which is provided to the City upon request. (C.S. ¶ 15; Lanier Dep. Docket No. 33 at 9-20; Treasurer's Sale Manual Docket No. 33.) The County tax billing file is the only source from which tax billing addresses for owners is obtained in order to send out certified restricted mail notices to interested parties for treasurer sales. (C.S. ¶ 16; Lanier Dep. Docket No. 33 at 9-10.) Returned mail notices are checked with the deed registry, Coles Directory, post office records, and the telephone book. (C.S. ¶ 18; Treasurer's Sale Manual Docket No. 33 at 4; Lanier Dep. Docket No. 33 at 21-24.)

**C.      Treasurer's sale and notice to the Ragos**

Due to the unpaid property taxes for 2006 and 2007, the City under the direction of its treasurer sent notice of the impending tax sale on July 13, 2007 by registered mail, certified and restricted, addressed individually to each plaintiff at the Brownsville address. (C.S. ¶ 21; Pls.' App. (Docket No. 33), Ex. 7 ("Certified Mail Receipts Docket No. 33".) On July 14, 2007, both notices were signed for by someone other than the Ragos or Krupa. (C.S. ¶ 22; Certified Mail Receipts Docket No. 33; Pls.' App. (Docket No. 33), Ex. 8 ("Krupa Dep. Docket No. 33") at 20-23.) The City either failed to inspect the return receipts or did not recognize the signature was not that of the Ragos and proceeded with the sale of the Property. (C.S. ¶¶ 22-23.) The City placed the Property on a treasurer's sale list to be sold on August 17, 2007, if the delinquent 2006 and 2007 taxes were not paid. (C.S. ¶ 20.)

Plaintiffs did not receive actual notice of the tax sale and were unaware that the Property was delinquent in the payment of its City taxes or that there was an impending treasurer's sale. (C.S. ¶ 26; Pls.' Dep. Docket No. 33 at 39, 56-60.) On August 17, 2007, the City sold the

Property at a treasurer's sale to R.E. Servicing, LLC ("R.E."). (C.S. ¶ 27; Am. Compl. Docket No. 33 ¶ 9.) On December 11, 2007, R.E. informed the Ragos by letter sent to Heron Cove that the Property was sold at a treasurer's sale and demanded the Ragos vacate the Property. (C.S. ¶ 30; Pls.' App. (Docket No. 33), Ex. 10 ("R.E. Letter Docket No. 33").) The Ragos' statutory right of redemption had passed, and this was the first time they learned about the treasurer's sale. (C.S. ¶ 30; Pls.' Dep. Docket No. 33 at 38.)

On December 20, 2007, the state trial court ruled that the treasurer's sale of the Property was regularly conducted in accordance with the requirements of the Second Class City TSCA, and the validity of the sale of the property, among other properties, was upheld and affirmed. (Defs.' App. (Docket No. 38), Ex. F.)[2] On January 3, 2008 a deed of conveyance was recorded in R.E.'s favor for the Property from the City's director of finance. (C.S. ¶ 32; Pls.' App. (Docket No. 33), Ex. 11("Deed Docket No. 33").) After the Ragos were unable to regain title to their property, they filed the present suit on October 9, 2008. (C.S. ¶ 34.)

### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether the dispute is

---

[2] Plaintiffs, who were not a party to that matter, admitted this fact. (Defs.' Combined Concise Statement of Material Facts ("Defs.' C.S.") (Docket No. 43) ¶ 32.)

genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 249.  The court is to draw all reasonable inferences in favor of the nonmoving party.  El v. Southeastern Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007) ("In considering the evidence, the court should draw all reasonable inferences against the moving party.")  The United States Court of Appeals for the Third Circuit has stated:

> [I]f there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted.  Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will.

Id.  The court may consider any material evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2721, at 40 (2d ed. 1983)); Pollack v. City of Newark, 147 F. Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").


*Discussion*

**I.      Subject-Matter jurisdiction under the Rooker-Feldman doctrine and the Tax Injunction Act**

Before the court can reach plaintiffs' claim for violation of the due process clause of the Fourteenth Amendment, the threshold issue of subject-matter jurisdiction must be addressed. Defendants argue in their motion for summary judgment that plaintiffs' claim is barred for lack

of subject-matter jurisdiction pursuant to the <u>Rooker-Feldman</u> doctrine and the Tax Injunction Act, 28 U.S.C. § 1341.

## A. **<u>Rooker-Feldman</u> doctrine**

Under the <u>Rooker-Feldman</u> doctrine a United States district court lacks subject-matter jurisdiction to review a final decision of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with a state court judgment which predates the filing of the federal action. <u>Blake v. Papadakos</u>, 953 F.2d 68, 71 (3d Cir. 1992) (citing, <u>inter alia</u>, <u>Dist. of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 483 n.16 (1983) and <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923)); <u>see</u> <u>Madera v. Ameriquest Mortgage Co.</u> (<u>In re Madera</u>), 586 F.3d 228, 232 (3d Cir. 2009); <u>see also</u> <u>Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream</u>, 317 F. App'x 263, 265-66 (3d Cir. 2009).

When a plaintiff seeks to litigate a claim in a federal court, the existence of a state court judgment in another case bars the federal proceeding under the <u>Rooker-Feldman</u> doctrine when entertaining the federal court claim would be the equivalent of an appellate review of that order. <u>See</u> <u>Ernst v. Child & Youth Servs.</u>, 108 F.3d 486, 491 (3d Cir. 1997). For that reason, the <u>Rooker-Feldman</u> doctrine applies when, in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual. Under those circumstances, federal claims are inextricably intertwined with the state court's decision. <u>Id.</u> (citing <u>FOCUS v. Allegheny Court of Common Pleas</u>, 75 F.3d 834, 840 (3d Cir. 1996)). The <u>Rooker-Feldman</u> doctrine precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling. <u>FOCUS</u>, 75 F.3d at 840; <u>Blake</u>, 953 F.2d at 71.

This limitation upon federal district court subject-matter jurisdiction derives from 28 U.S.C. § 1257, which provides that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court." 28 U.S.C. § 1257; see Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir. 1992) (citations omitted). Litigation challenging the correctness of the state court's resolution of the federal question must be through appellate review in the state courts and ultimately may be reviewed by the United States Supreme Court - not by a district court.

In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), the Court reviewed the Rooker-Feldman doctrine and held that the doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 283-84. The Supreme Court reasoned that, in those instances, federal court complaints should be dismissed for want of subject-matter jurisdiction. Id. "Rooker-Feldman bars a losing party in a state court 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" Id. (quoting Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994)). The Supreme Court found that the Rooker-Feldman doctrine did not apply in Exxon Mobil because the state court judgment at issue in that decision had not been entered prior to the filing of the federal court action. Id. at 293-94.

Defendants argue that the Rooker-Feldman doctrine applies because the Allegheny County Court of Common Pleas rendered a final judgment and found that the treasurer's sale of the Property was valid. Plaintiffs, however, cannot be losing parties under Rooker-Feldman because they were not parties to the state court proceeding. See Exxon Mobil, 544 U.S. at 283-84. As

such, the Rooker-Feldman doctrine does not apply here.

**B. Tax Injunction Act**

The Tax Injunction Act provides: "The district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in courts of such State." 28 U.S.C. § 1341. The Tax Injunction Act's legislative history indicates that it was designed expressly to restrict the jurisdiction of the district courts of the United States over suits relating to the *collection* of state taxes. Hibbs v. Winn, 542 U.S. 88, 104 (2004). The Tax Injunction Act also bars taxpayers from asserting due process claims against the validity of State tax systems in federal courts. Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 116 (1981). Taxpayers must seek protection of their federal rights by state remedies; provided, that those remedies are plain, adequate, and complete. Id. The United States Supreme Court, however, has interpreted and applied the Tax Injunction Act only in cases in which state taxpayers seek federal court orders enabling them to avoid paying state taxes. Hibbs, 542 U.S. at 107.

In Lussenhop v. Clinton County, N.Y., 466 F.3d 259 (2d Cir. 2006), the Court of Appeals for the Second Circuit dealt with a situation almost identical to the present case. Each plaintiff in Lussenhop owned real property and was delinquent in paying property taxes. Lussenhop, 466 F.3d at 261. In response, the taxing authorities initiated foreclosure proceedings. Id. The local governments ultimately sold or intended to sell the taxpayer's property at a public sale to satisfy the unpaid property taxes. Id. None of the plaintiffs in Lussenhop disputed the authority of the governmental body to collect taxes due on the real property in question or contested the assessments of their property or the amount of the taxes claimed due. Id. Instead, the plaintiffs asserted that the local taxing authorities failed to notify them adequately of the pending

foreclosure and subsequent public sale of their property.  Id.  The court of appeals held that

because the plaintiffs challenged the notice procedures rather than the assessment, levy or

collection of any tax under State law, the Tax Injunction Act did not apply.  Id. at 268.

The Ragos do not challenge the authority of the City to collect taxes due on the Property or

the amount of taxes claimed due.  Viewing the disputed facts in favor of plaintiffs, the record

reflects that plaintiffs were not aware that the City taxes had become delinquent until after the

treasurer's sale and the ninety-day redemption period passed.  Plaintiffs limited their claim

against defendants to an alleged violation of due process for failing to give adequate notice of the

treasurer's sale.  Plaintiffs are not asking the court to enjoin, suspend, or restrain the assessment,

levy or collection of any tax under Pennsylvania Law.  The Tax Injunction Act, therefore, does

not apply.

## II.  Whether plaintiffs are entitled to summary judgment pursuant to Federal Rule of Civil Procedure 8(b)(6)

The court must decide whether plaintiffs are entitled to summary judgment because

defendants failed to answer an amended complaint.  Federal Rule of Civil Procedure 8(b)(6)

provides:  "***Effect of Failing to Deny***.  An allegation – other than one relating to the amount of

damages – is admitted if a responsive pleading is required and the allegation is not denied.  If a

responsive pleading is not required, an allegation is considered denied or avoided."  FED. R. CIV.

P. 8(b)(6).

The Court of Appeals for the Third Circuit has held that under Rule 8(d) of Federal Rules of

Civil Procedure, a party's denial in an answer to an original complaint serves equally to deny an

averment in the amended complaint when the allegations in the original complaint and in the

amended complaint are substantially the same.  LaGorga v. Kroger Co., 407 F.2d 671, 673 (3d

Cir. 1969) (holding the allegations in an original complaint and an amended complaint were

substantially the same when the original complaint alleged the appellees manufactured a jacket identical to the one in question, and the amended complaint charged the appellees "with manufacture of the particular jacket worn by the minor plaintiff"). It is well established that under the federal rules pleading is a vehicle "to facilitate a proper decision on the merits" and not "a game of skill in which one misstep by counsel may be decisive . . . ." Id. (citing United States v. Hougham, 364 U.S. 310, 317 (1960)).

Plaintiffs believe they are entitled to summary judgment because defendants failed to file an amended answer to paragraph 18 of the amended complaint and that paragraph should be deemed admitted. Paragraph 18 in the original complaint reads as follows: "It is believed discovery will disclose that the custom of the City of Pittsburgh, its Treasurer and Lanier is to conduct sales of properties pursuant to 72 P.S. §§ 5860.101 – 5860.803 without regard to proper notice." (Compl. ¶ 18 (Docket No. 1).) Paragraph 18 in the amended complaint states: "It is believed discovery will disclose that the custom of the City of Pittsburgh, its Treasurer and Lanier is to conduct sales of properties pursuant to 72 P.S. §§ 5860.101 – 5860.803 and/or 53 P.S. § 27101 et. al. without regard to sufficient notice or procedures required by Pennsylvania and Federal Law." (Am. Compl. ¶ 18 (Docket No. 24).)

In the answer to plaintiffs' original complaint, defendants denied the allegations set forth in paragraph 18. (Defs.' Answer (Docket No. 12) at ¶ 18.) Despite the reference to another Pennsylvania statute in paragraph 18 of the amended complaint, plaintiffs do not allege any additional facts. The two paragraphs are substantially similar. Therefore, defendants' denial in the answer to the original complaint serves equally to deny the averment in the amended complaint. Summary judgment cannot be granted in plaintiffs' favor based upon the pleadings alone.

### III. Section 1983 claim for violation of due process under the Fourteenth Amendment

Plaintiffs assert a claim under 42 U.S.C. § 1983 against defendants for failing to provide proper notice of a treasurer's sale which allegedly violated their due process rights under the Fourteenth Amendment. Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983. In order to establish a claim pursuant to § 1983 a plaintiff must prove the following three elements: 1) the defendant was a person; 2) the defendant acted under color of state law; and 3) the defendant's actions caused a deprivation of a right guaranteed by the United States Constitution or federal law. Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).

#### 1. Claim against the City

##### a. General framework

###### i. Municipal liability

"Municipalities and other local government units [are] to be included among those persons to whom § 1983 applies." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). A municipality like the City may only be held liable under § 1983 when the alleged violation is attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policymaker. City of St. Louis v. Praprotnik, 485 U.S. 112, 122-23 (1988). There is no *respondeat superior* theory of municipal liability, nor may a municipality be held vicariously liable for the actions of its employees under § 1983. Monell, 436 U.S. at 691. A municipality is

not liable under § 1983 unless its policy or custom is the "moving force" behind the constitutional violation.  Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006).  In order to be considered a "moving force" the policy or custom must be shown to have a direct causal link to the alleged constitutional deprivation.  City of Canton v. Harris, 489 U.S. 378, 389-90 (1989).

The Court of Appeals for the Third Circuit has noted:

> Our jurisprudence is clear that "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom."

McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)).  The "two path track" to municipal liability must be premised on a policy or custom.  Id.  A policy is made "when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).  A custom is a practice "'so permanent and well-settled' as to virtually constitute law."  Id. (citations omitted).  "Custom requires proof of knowledge and acquiescence by the decisionmaker."  McTernan, 564 F.3d at 658.

### ii.  Due process under the Fourteenth Amendment

The United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  The United States Supreme Court has held that due process under the Fourteenth Amendment does not require that a property owner receive actual notice before the government may take that owner's property.  Jones v. Flowers, 547 U.S. 220, 226 (2006) (citing Dusenbery v. United States, 534 U.S. 161, 170 (2002)).  The government is required to provide "notice reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Jones</u>, 547 U.S. at 226 (citing <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950)). When discussing the methods the government must use when notice is a person's due, the Court in <u>Mullane</u> emphasized that "process which is a mere gesture is not due process." <u>Mullane</u>, 339 U.S. at 315. "[T]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." <u>Id</u>; <u>see</u> <u>Jones</u>, 547 U.S. at 238 (holding that when mailed notice of a tax sale is returned unclaimed, the government must take additional reasonable steps before taking the taxpayer's property).[3]

In <u>Jones</u>, the Court grappled with the unique issue whether due process requires more of the government when it becomes aware, prior to the taking of real property, that its attempt at notice has failed. <u>Jones</u>, 547 U.S. at 227. Conversely in <u>Mullane</u> and <u>Dusenbery</u>, the government attempted to provide notice and was not aware that anything had gone awry. <u>Id.</u> at 226. The Court in those decisions recognized that "[t]he reasonableness and hence the constitutional validity of [the] chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." <u>Id.</u> (citing <u>Mullane</u>, 339 U.S. at 315). Due process rights are protected if the *means* of providing notice are found to be reasonably calculated to apprise interested parties of the pendency of the action.

---

[3] Plaintiffs rely on <u>Equity One, Inc. v. City of Pittsburgh</u>, No. 03-1816, 2006 WL 1509334 (W.D. Pa. May 30, 2006), for the proposition that mailing notice to the Ragos' tax billing address alone is insufficient to provide due process. The district court in <u>Equity One</u> did not reach such a conclusion. The plaintiff in <u>Equity One</u> was a mortgagee and claimed that its due process rights had been violated because the City published a tax sale notice of a property in which the plaintiff had an interest, but did not mail notice. The district court agreed with the plaintiff and relied upon <u>Mennonite Board of Missions v. Adams</u>, 462 U.S. 791, 798-800 (1983), concluding that "constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." <u>Equity One</u>, 2006 WL 1509334, at *3. The district court reasoned that mailing notice to the record property owner was not enough to satisfy a *mortgagee's* due process rights under the Fourteenth Amendment. <u>Id.</u> Here, plaintiffs are record owners of the Property, and notice was mailed to the tax billing address for the Property. A mortgagee's due process rights are not implicated in this case.

The Supreme Court has held on multiple occasions that when the government sends notice by certified mail to a record address of an affected party, that method is reasonably calculated to inform those affected by the government action.  See, e.g.,  Dusenbery, 534 U.S. at 169 (the use of the postal service to send certified notice to known addressees is recognized as an adequate method); Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 490 (1988) ("We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice."); Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 (1983) (postal officials and employees are skilled in making proper delivery of letters defectively addressed); Mullane, 339 U.S. at 319 ("[T]he mails today are recognized as an efficient and inexpensive means of communication.").

In Dusenbery, proper notice was effectuated when the government was aware that someone at a prison signed for a prisoner's certified notice letter, even though notice could have been made more likely by requiring the prisoner to sign for the letter himself.  See Dusenbery, 534 U.S. at 170-71.  The Court in Dusenbery reiterated that precedent has never required actual notice.  Id. at 171.

In Borkin v. City of Philadelphia, No. 04-5823, 2008 WL 4058694 (E.D. Pa. Aug. 29, 2008), the district court held that when notice of a tax lien sale was mailed to the property owner by regular mail, the notice was presumed to have been received, and nothing more was constitutionally required.[4]  Borkin, 2008 WL 4058694, at *3; see Neubert v. Armstrong Water Co., 61 A. 123 (Pa. Super. Ct. 1905).   The district court determined that sending notice by regular mail was sufficient to pass constitutional muster, even though certified-mail notices sent by the City of Philadelphia to the property owners were returned unopened.  Id.  The court

---

[4] Borkin dealt with an analysis of 53 PA. CONS. STAT. §§ 7189, 7193.2 and whether the requirements under those sections were satisfied by the City of Philadelphia.

distinguished <u>Jones</u>, holding the notice in <u>Borkin</u> sent by regular mail was not returned, and the additional steps required in <u>Jones</u> were not implicated.  <u>Id.</u>

In <u>Smith v. Tax Claim Bureau of Pike County</u>, 834 A.2d 1247 (Pa. Commw. Ct. 2003), the appellee had purchased property with her husband as tenants by the entireties.  <u>Id.</u> at 1249. The appellee claimed that the county tax bureau ("Bureau") failed to provide adequate notice to her of a pending tax sale of the property when the Bureau mailed notices by certified mail, restricted delivery, and her husband signed both notices addressed individually to each owner. <u>Id.</u> at 1249-50.  In affirming the trial court's holding that set aside the tax sale, the commonwealth court interpreted and applied the Real Estate Tax Sale Law ("Real Estate Law"), 72 PA. CONS. STAT. § 5860.602, *et al*.  The court concluded the tax sale violated the Real Estate Law because the language of the Real Estate Law mandated the Bureau to use "reasonable efforts to discover the whereabouts" of a person, when notice of a tax sale is returned without the personal signature of that person or "there are other circumstances raising significant doubt as to the personal receipt of the … notice."  <u>Id.</u> at 1252; <u>see</u> 72 PA. CONS. STAT. § 5860.607(a); <u>but see</u> 53 PA. CONS. STAT. § 27203.

### iii.  The Second Class City TSCA

Plaintiffs allege that the system developed by the City for providing notice violated the Second Class City TSCA.  Section 27203 of the Second Class City TSCA reads:

> **(a) System**.—The treasurer shall establish a system of effecting notice to interested parties.  The procedure shall be reasonably calculated under the circumstances to apprise the interested parties of the pendency of the sale and to afford parties the opportunity to defend their interests in the property.
>
> **(b) Service**.—Service of written notice made by certified mail is complete when the notice is mailed.  If the notice is not delivered or claimed, delivery is refused,

the return receipt is not executed or the treasurer fails to receive information from the post office respecting the notice before the date fixed for sale, the validity of the service shall not be impaired and the sale shall proceed at the time fixed by the notice.  Information or material received by the treasurer from the post office respecting notice, whether before or after the sale, shall be included in the treasurer's report filed with the court under section 305.

**(c) Challenge**.—A challenge by an owner to the inclusion of a property in the sale shall be taken by the owner within ten days after service of written notice by filing a verified objection in writing with the treasurer.

**(d) Effect of notice**.—No sale may be set aside and no title to property sold may be invalidated if notice was given under this section.

53 Pa. Cons. Stat. § 27203.  Section 27203(a) uses the <u>Mullane</u> standard to determine whether the notice procedures of a second class city meet due process.  <u>See</u> <u>supra</u> pp. 14-15.  Second Class City treasurers must establish a system of effecting notice of a pending treasurer's sale to interested parties.

### b.  Application

Here, the City adopted the Standard Treasurer's Sale Process Manual (the "Manual"). (Treasurer's Sale Manual Docket No. 33.)  The Manual explicitly provides for a mailing notification process, which includes:  sending notices by first-class regular and certified mail; checking the notices for error and making corrections prior to distribution; checking returned (e.g., undeliverable, failure to accept, unknown address, or unclaimed) mail notices against the deed registry, Coles Directory, post office records, and the telephone book; and resending notices when additional information is available.  (Manual, Docket No. 33 at 3-4.)  Additionally, the City's unwritten policy is that tax billing addresses for property owners are obtained by the

treasurer from the County tax billing file. Notice of a treasurer's sale is sent to the appropriate tax billing address taken from the County file.

The treasurer will review the signatures of certified mail receipts to determine whether the addressee signed for the notice. (Lanier Dep. Docket No. 33 at 23-24.) If it is determined by the treasurer and his or her personnel that the receipt bears an incorrect signature, then additional information is gathered using the methods described above, and the notice is resent. (Id. at 21-24.)

The evidence presented demonstrates that the City complied with the procedures outlined in the Manual and the policy of obtaining tax billing addresses. The tax billing address provided to the County at the time City taxes became delinquent was the Brownsville address. This address was the location to which tax bills were sent, and notices of delinquency and the treasurer's sale were sent to that address. The City sent notice of the treasurer's sale to plaintiffs at the Brownsville address by certified mail, first class and restricted.[5] The notice was not returned unclaimed, undelivered, or for any other reason which would alert the City to use additional reasonable means to discover the whereabouts of the record owner. The notice sent by certified mail was recognized as claimed and signed. There is no evidence of record to indicate that Lanier or Fees had personal knowledge that the certified mail receipt was signed by someone other than the Ragos. The failure here concerns the possible oversight of a City employee who may have failed to determine that the signature on the certified mail receipt was not that of the Ragos. (See Pls.' Br. in Supp. for Partial Summ. J. (Docket No. 31) at 2.) Monell concluded, however, that municipalities cannot be held liable under § 1983 *solely* because they employ a tortfeasor. Monell, 436 U.S. at 691; Borkin, 2008 WL 4058694, at *4 ("[T]he City's

---

[5] The only evidence that notice was sent by regular mail is the objective notice procedure outlined by Lanier in her deposition and located in the Manual. (Manual, Docket No. 33 at 3-4.)

established practice of always sending notices by both regular and certified mail protects it from due process claims based upon negligence of its employees in carrying out the policies.").

The court finds that the City's system of effecting notice to interested parties is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The system described in the Manual meets the standards set forth in <u>Jones</u> by sending notice of the treasurer's sale to the property owner's last known address to which tax bills were sent by certified and regular mail, and taking additional reasonable steps to locate the property owner if notice is returned for various reasons. The policy of reviewing signatures for error goes beyond what was constitutionally required in <u>Dusenbery</u>. In <u>Dusenbery</u>, the notice was not constitutionally defective even if someone other than the addressee signed for the notice. The holding in <u>Smith</u> is not implicated here because the decision of the commonwealth court in that case dealt with the applicability of a state statute – not the constitutional due process parameters of adequacy of notice. The Manual on its face exceeds the standard for notice espoused in <u>Borkin</u>. In <u>Borkin</u>, the district court found that due process had been provided when the taxing authority's policy was to send notice by regular and certified mail, even though the certified mail was returned unclaimed. Here, the Manual required notice be sent by certified and regular mail, and the certified notice receipt was returned claimed and signed, albeit signed by someone other than the Ragos.

The City did not violate plaintiffs' rights under the Due Process clause. It followed a reasonable procedure for the service of notice under the Second Class City TSCA, <u>Mullane</u>, and <u>Borkin</u>. There is no evidence of record to indicate the change to the Ragos' tax billing address in July 2004 was prompted by any policy or custom adopted by the City. The City's policy of

sending notice to taxpayers of a treasurer's sale at their last known address to which tax bills

were sent meets the requirements of <u>Mullane</u> and its progeny. There is no custom or policy

adopted by the City or decision of a final policymaker for the City that deprived the Ragos of due

process. Under those circumstances, no reasonable jury could find municipal liability on the part

of the City under § 1983.

       Although the court finds that the City's notice procedures satisfied the requirements of

due process, defendants argue that even if they did not, there was an adequate post-deprivation

remedy available. Having determined that the notice provided did not give rise to a due process

violation, the court need not address whether there was an adequate post-deprivation remedy.[6][7]

---

[6] In order to state a claim for failure to provide due process, plaintiffs must demonstrate that they took advantage of post-deprivation processes that were available to them, unless those processes were unavailable or patently inadequate. <u>Elsmere Park Club, L.P. v. Town of Elsmere</u>, 542 F.3d 412, 420 (3d Cir. 2008); <u>see</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 126 (1990) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.").
    The Second Class City TSCA provides the opportunity to appeal a treasurer's sale under Section 27303, which provides:

> **(a) Filing.**—An interested party whose vested right in property is adversely affected by the treasurer's sale may have 30 days in which to file an appeal with the court of common pleas contesting the regularity of the sale procedure. Service of the appeal shall be made on the treasurer simultaneously with the filing of the appeal.
>
> **(b) Issues.**—The appeal may question only the regularity of the proceedings of the treasurer's sale. It may not raise the legality of the taxes or the correctness of the amount of the claims for which the property was sold.
>
> **(c) Time limits.**—A hearing on the appeal shall be held within 20 days after its filing. Within ten days of the hearing, the court shall enter an order either upholding the regularity of the sale or requiring the property to be listed for the next treasurer's sale.

53 PA. CONS. STAT. § 27303.
    Plaintiffs demonstrated that they could not appeal under § 27303 because by the time they learned about the sale of the Property, an appeal was time barred. Plaintiffs did not learn about the treasurer's sale until December 11, 2007, well after the thirty-day filing period and the ninety-day period of redemption. The post-deprivation remedy was unavailable to plaintiffs, and they arguably could be successful on this issue if their due process claim was found to have merit.

[7] Defendants argue that a *nunc pro tunc* appeal was available to plaintiffs and would adequately provide them with a post-deprivation remedy. This reasoning may be flawed, however, because a *nunc pro tunc* appeal is not a remedy

## 2. Claims against Lanier and Fees

### a. Supervisory liability

In order to establish liability against a supervisory official like Lanier and Fees, a plaintiff may not base a § 1983 action solely upon a theory of respondeat superior. <u>Rode v. Dellariciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff, however, may allege facts indicating that a supervisory official acting in an *individual* capacity had personal involvement in the alleged wrongs, by showing "allegations of personal direction or of actual knowledge and acquiescence." <u>Id.</u> The Court of Appeals for the Third Circuit discussed the contours of supervisory liability in <u>Montgomery v. De Simone</u>, 159 F.3d 120 (3d Cir. 1998), stating a supervisor's

> failure to train, discipline or control can only form the basis for § 1983 [supervisory] liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.

<u>Id.</u> at 127. Supervisors are not deemed to have constructive knowledge of a subordinate's alleged "unconstitutional conduct simply by virtue of his or her supervisory position." <u>McQueen v. Phila. Hous. Auth.</u>, No. 02-8941, 2003 WL 22533726, at *3 (E.D. Pa. Sept. 26, 2003).

---

related to safeguarding the due process interests of those injured by the Second Class City TSCA. <u>See</u>, <u>e.g.</u>, <u>Zinermon</u>, 494 U.S. at 126 (in asking what process the State provided and whether it was constitutionally adequate, the "inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law"); <u>see also</u> <u>Alvin v. Suzuki</u>, 227 F.3d 107 (3d Cir. 2000) (holding that a professor failed to avail himself of the university's "Faculty Grievance Procedure"); <u>Bohn v. Dakota County</u>, 772 F.2d 1433, 1441 (8th Cir. 1985) (parents failed to utilize state's administrative review procedures); <u>Dusanek v. Hannon</u>, 677 F.2d 538, 543 (7th Cir. 1982) (tenured teacher failed to take advantage of proper dismissal hearing provided under Illinois procedure); <u>Todd v. Luzerne County Children and Youth Services</u>, No. 04-2637, 2008 WL 859253 (M.D. Pa. Mar. 28, 2008) (foster parents could appeal adverse decision under Pennsylvania statute).

There are no facts presented that Fees or Lanier personally checked the signature of the certified mail receipt. The problem here was a failure by someone in the Treasurer's Department to see that the signature was not that of the Ragos. Plaintiffs have not shown that Fees or Lanier had personal involvement in checking signatures or actual knowledge that the signature was not that of the Ragos. See, e.g., Andrews v. City of Phila., 895 F.2d 1469, 1479 (3d Cir. 1990) (a supervisor acquiesced to discriminatory acts when he "was aware of the problems . . . but did nothing to stop them. The [incidences of unconstitutional conduct] were so offensive and regular that they could not have gone unnoticed by the man who was ultimately responsible for the conduct of the Division."). Additionally, plaintiffs did not adduce facts to demonstrate that Lanier and Fees had knowledge of a prior pattern of similar incidents and circumstances where signatures were improperly verified. There are no facts presented to establish supervisory liability against Lanier and Fees.[8] Under those circumstances no reasonable jury could render a verdict in favor of plaintiffs against Lanier or Fees.

### Conclusion

Viewing all the facts in the light most favorable to plaintiffs and drawing all reasonable inferences in plaintiffs' favor, the court concludes that a reasonable jury could not render a verdict in favor of plaintiffs on their claim under § 1983 for a violation of due process. Summary judgment must be granted in favor of defendants.

---

[8] Plaintiffs also sued Lanier in her official capacity. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, Lanier may only be held liable under § 1983 in her official capacity "if the constitutional violation at issue was in fact caused by the implementation or execution of a municipal 'policy, statements, ordinance, regulation or decision officially adopted and promulgated by municipal officiales [sic].'" Bright v. Westmoreland County, 380 F.3d 729, 736 n.2 (3d Cir. 2004) (citing Monell, 436 U.S. at 691-94)). Having found that the notice policies adopted by the City did not violate plaintiffs' due process rights, the court cannot find Lanier liable in her official capacity under § 1983. See Bright, 380 F.3d at 736 n.2; see also McCachren v. Blacklick Valley Sch. Dist., 217 F. Supp. 2d 594, 599 (W.D. Pa. 2002) (dismissing official capacity actions against the individual defendants because "the potential liability of the [municipal entities]" rendered "the official capacity actions needlessly duplicative.").

By the court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Dated: July 29, 2010                    United States District Judge